**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**BRENDA L. SMYTHE,**

    **Plaintiff,**

**v.**                                                  **Case No. 8: 06-cv-949-T-27TBM**

**MICHAEL J. ASTRUE[1],**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
                                      /

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments.[2] Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed.

I.

Plaintiff was forty (40) years of age at the time of her administrative hearing in October 2004. She stands 5' 4" to 5'5" tall. Plaintiff has a tenth grade education. Her past

---

[1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

[2]This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987. See also M.D. Fla. R. 6.01(c)(21).

relevant work was as a cook, cashier/stocker, barmaid, and blueprint operator/filing clerk..
Plaintiff applied for Social Security disability benefits and Supplemental Security Income payments in July 2002, alleging disability as of June 1, 2002, by reason of Hepatitis C, pain and fatigue. Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Her mother and former husband testified as well. Additionally, a vocational expert was called by the ALJ. In essence, Plaintiff testified that she could no longer work due to shortness of breath, an inability to lift anything, a lack of concentration, low back pain, and knee pain. She testified that she last worked in June 2002 at a Family Dollar Store. She quit work when she found out she had Hepatitis C and she hurt her knee. Plaintiff underwent treatment for Hepatitis C for one year but the Interferon injections made her ill. Regarding her back pain, Plaintiff claims that, on a scale of one to ten with ten being the highest level of pain, it reaches a level ten three to four times a week. The rest of the time, it is at a level five. When it is severe, she takes medication and lies down for an hour or more. She describes her back pain as radiating into her legs, and at times her legs go numb for half the day. Sitting increases the pain. Her knees ache constantly and this also affects her walking. She cannot bend and pick up things off the ground "too often."

Plaintiff also complains of constant migraine headaches. She takes two medications for this, and when she has the headaches, she has to lie down for up to an hour. Plaintiff also suffers from diabetes. The condition causes her feet to swell, she gets headaches, and has blurred vision. She also experiences shortness of breath. This condition gets worse with

activity. She takes medication and uses a nebulizer two to four times a day for ten to fifteen minutes. She tires easily. Plaintiff smokes.

Plaintiff lives with her mother who cares for her. She testified that she has more "bad days" than "good days" in a month. On "bad days," she stays in bed most of the day. She watches television. Plaintiff tries to wash dishes for ten to fifteen minutes but then has to rest; her mother does the household chores. Plaintiff does not leave home often. She drives one or two times a month. Plaintiff claims she cannot stand while bathing and has to sit on a stool. Bathing and combing her hair are strenuous. She doesn't sleep well at night, and she tries to nap during the day. Pushing and pulling with her legs and arms is difficult and causes pain. She cannot climb too well.

Plaintiff estimates she can only sit and stand for ten to fifteen minutes. She has difficulty walking and sometimes she falls. Lifting a gallon of milk bothers her. She takes a variety of medications that help at times. Plaintiff occasionally gets an upset stomach and the medications makes her feel nervous. She wears braces for her knees. She uses a heating pad three to four times a week. See Plaintiff's testimony (R. 787-804).

Ms. Sadler, Plaintiff's mother, testified that her daughter became ill, got divorced, and needed help, so Plaintiff moved in with her. Plaintiff is not in good health. She suffers from a number of conditions that cause her to lie down most of the time. Plaintiff is unable to sit or stand for long. She does not socialize except for occasionally eating out with her former husband, and she does not drive often. She smokes a pack of cigarettes or less a day. Plaintiff takes six or seven different medications a day. See (R. 804-07).

Plaintiff's former husband, Joe Penta, also testified. He sees Plaintiff every week. According to him, her condition changed for the worse about four years ago. She could not

3

catch her breath and she experienced nausea with severe stomach aches. They later discovered she had Hepatitis C. Plaintiff used to be "a very outgoing, runabout" person, but now she has shortness of breath, cannot walk far without having to sit down, and does not drive often. She has to change positions a lot. Mr. Penta testified that he can tell Plaintiff is in pain because of her constant complaining. See (R. 807-10).

The ALJ called Everett L. Tessmer, a vocational expert ("VE"), who testified on an assumption of a person of Plaintiff's age, education and work experience capable of light exertional work, limited by occasional climbing, balancing, stooping, kneeling, and crouching, with reduced attention and concentration so that she would have difficulty concentrating and maintaining attention for extended periods of time, and with moderate limitations for accepting instructions and responding appropriately to criticism but capable of routine, simple tasks. On this hypothetical, the VE opined that such person could not do Plaintiff's past work, but could work as a ticket seller, mail clerk, and office helper. On the further assumption that Plaintiff's testimony concerning her limitations would be fully credited, such person could not perform any jobs. Counsel for the Plaintiff had no questions of the VE. See (R. 810-14).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set out herein as necessary.

By his decision of January 12, 2005, the ALJ determined that while Plaintiff has severe impairments related to Hepatitis C, obesity, a recent history of polysubstance abuse, an adjustment disorder, and was status post-arthroscopy in both knees, she nonetheless had the residual functional capacity to perform light exertional work with limitations consistent with

4

the original hypothetical to the VE.  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 20-29).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that he has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  Keeton

v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ erred in determining the claimant's RFC;

(2) The ALJ erred in failing to make proper credibility findings as to the claimant's or other witnesses' testimony; and

(3) The ALJ erred in mischaracterizing the VE's testimony.

6

(Doc. 15).

Plaintiff's first two claims are interrelated and are addressed together.  By these claims, Plaintiff argues that the ALJ erred in several respects in determining her residual functional capacity ("RFC").  Plaintiff first takes issue with the ALJ's RFC finding that she would miss up to two days of work per month.  According to Plaintiff, a person who misses two days of work per month is not fully employed and/or is unable to perform work on a regular and continuing basis, for eight hours a day, five days a week.[3]  Thus, she urges on this basis that she is disabled (by missing 24 days of work per year) or, at the least, the ALJ erred in failing to present this limitation to the VE.  Plaintiff next faults the ALJ for failing to consider her significant fatigue associated with Hepatitis C, that she becomes disoriented and has difficulty concentrating due to her medications, her testimony regarding her shortness or breath and inability to concentrate, that she has constant pain in her back and knees and cannot do anything when her pain acts up, that her lower extremities are numb at least half the day, that she has to lie down for ten to fifteen minutes after walking a short distance, and that she sleeps for only a few hours each night and stays in bed approximately fifteen days per month.  By this litany of complaints, Plaintiff argues that the ALJ erred by failing to consider the side effects of her medications and properly apply the pain standard with regards to her non-exertional impairments.  Similarly, Plaintiff argues further that the ALJ erred by failing to provide adequate reasons for discounting her subjective allegations and address the weight

---

[3]In support thereof, Plaintiff cites to Kelly v. Apfel, 185 F.3d 1211, 1214-15 (11th Cir. 1999) (stating that only an ability to do full-time work will permit the ALJ to render a decision of not disabled), and SSR 96-8p, which states that the claimant must have the RFC to perform work on a "regular and continuing basis," which means "8 hours a day for 5 days a week, or an equivalent work schedule." (Doc. 15 at 4-5).  She also urges that her testimony that she spends up to 15 days per month bedridden supports a finding of disability.

7

accorded the testimony of her mother and ex-husband. Lastly, Plaintiff argues that the ALJ failed to consider the combined effect of her impairments and her psychiatrist's opinion that she had a GAF score of 50-55.[4]  (Doc. 15 at 4-8).

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.[5]  Lewis, 125 f.3d at 1440. If a claimant can still do the kind of work she has done in the past, then the Regulations require that she be found not disabled. At this stage of the evaluation process, the burden is on the Plaintiff to show that she can no longer perform her past relevant work. Jackson v. Bowen, 801 F.2d 1291, 1292 (11th Cir. 1986). In evaluating a claimant's residual functional capacity, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain.

---

[4]GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV). A GAF of 51 to 60 means "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers), and a GAF of 41-50 indicates either "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Id.

[5]When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Good cause for rejecting a treating source's opinion may be found where such opinion is not supported by the evidence, where the evidence supports a contrary finding, or where the doctor's opinions are conclusory or internally inconsistent. Lewis, 125 F.3d at 1440. Where the Commissioner has failed to properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

8

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. Id.; Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988); MacGregor, 786 F.2d at 1054. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Hale, 831 F.2d at 1012.

Here, after reviewing the medical evidence of record and considering Plaintiff's subjective allegations, the ALJ found that Plaintiff's Hepatitis C, obesity, recent history of polysubstance abuse, adjustment disorder, and status post arthroscopy, bilateral knees, constituted severe impairments under the regulations. (R. 22-24). As for the restrictions resulting from those impairments, the ALJ rejected Plaintiff's testimony to the extent that she suffered disabling limitations therefrom. To this end, the ALJ purportedly relied on the

medical evidence of record in discounting Plaintiff's subjective complaints and resulting limitations from Hepatitis C, back pain and lumbar disc disease, knee pain, diabetes, migraine headaches, shortness of breath, depression and anxiety. See (R. 25). The ALJ then determined that Plaintiff retained the RFC for light work[6] with the following limitations:

> She can balance, stoop, kneel and crawl occasionally; restricted to routine tasks not involving extended periods of concentration, involving few changes in work setting. She has fair ability to accept criticism from supervisors; and may miss or be tardy no more than 1 or 2 days per month.

(R. 26). In fashioning this RFC, the ALJ adopted the physical RFC assessment of a non-examining state agency doctor dated October 18, 2002, and the mental RFC assessment of the non-examining state agency psychiatrist dated March 11, 2003.[7] See (R. 812) and compare (R. 26) with (R 184-91, 229-31). As indicated above, Plaintiff challenges this determination on several grounds.

Plaintiff first takes issue with the portion of the ALJ's RFC finding that she "may miss or be tardy no more than 1 or 2 days per month." See (R. 26). While I am unable to conclude on the instant record that such a limitation would result in disability per se, I agree

---

[6] Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. §§ 404.1567(b), 416.967(b).

[7] The state agency doctor opined that Plaintiff could perform light work with occasional postural limitations. See (R. 184-91). The state agency psychiatrist opined that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. See (R. 229-30).

10

with Plaintiff that the ALJ erred by failing to include this restriction in the first hypothetical question posed to the VE and in relying on the same to conclude that Plaintiff was not disabled.  See Pendley v. Heckler, 767 F.2d 1561, 1562 (11th Cir. 1985) (holding that where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence) (quoting Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)).  Accordingly, remand is required on this ground.[8]  See id.

Regarding Plaintiff's complaints that the ALJ did not properly consider her nonexertional impairments/limitations or provide adequate reasons for discounting her subjective allegations, the decision reflects the ALJ credited Plaintiff with impairments which could reasonably be expected to produce her symptoms but not to the extent claimed.  (R. 24-26).  Thus, to the extent that Plaintiff complains that the ALJ failed to follow the applicable standard, the decision reflects otherwise.[9]  Moreover, the ALJ acknowledged with reasonable accuracy the full litany of Plaintiff's subjective complaints, including her testimony about the location, duration, frequency, and intensity of her pain and other symptoms, as well as the resulting limitations alleged.  See id. at 22-23, 25.

---

[8]The Commissioner does not address the ALJ's failure to include this limitation in the hypothetical posed to the VE.  See (Doc. 16 at 8-9).  Rather, he suggests that the VE's response to the ALJ's first hypothetical was consistent with Plaintiff's RFC.  Id. at 4.

[9]Although the ALJ did not explicitly reference this Circuit's pain standard, he recognized and applied the similar standard, citing to SSR 96-7p and the regulatory standard at 20 CFR §§ 404.1529, 416.929 (R. 22-25), which discuss the consideration of a claimant's subjective allegations of pain.  Proper application of the ruling and regulatory standard will satisfy the "pain standard."  See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

11

However, not all of the reasons provided by the ALJ for rejecting certain allegations are adequately supported by the record.[10] As for Plaintiff's complaints related to Hepatitis C such as fatigue and the need to lie down, given Plaintiff's year-long treatment with Interferon and the expected side effects noted by her physician, the ALJ's reason for discounting these complaints, i.e., that Plaintiff's doctor reported she was "generally doing well," is not supported by the record.  The ALJ also summarily discounted Plaintiff's complaints of headaches and migraines, reasoning that "there is no evidence of any significant treatment." (R. 25).  The ALJ seemingly ignored that Plaintiff was prescribed medication for migraines (R. 759) and complained to her doctors on numerous occasions about headaches.  See (R. 264, 267, 478, 484, 490, 491, 493, 495).  Similarly, the ALJ rejected Plaintiff's complaints of constant shortness of breath on the basis that "she continues to smoke."  (R. 25).  Nonetheless, the record clearly supports that Plaintiff has been diagnosed with asthma and/or COPD (R. 322, 477, 485, 488), was prescribed a nebulizer and inhaler for such (R. 112A, 796), and complained to her doctors about shortness of breath (R. 263, 477, 490).  On remand, the ALJ would be well-advised to address the subjective allegations with greater specificity and citation to the record evidence.

Regarding the claimed side effects of medication, Plaintiff testified that the medications make it hard for her to concentrate, sometimes upset her stomach, and make her "real nervous." (R. 799).  She testified further that during the one-year period she was getting weekly Interferon injections to treat her Hepatitis C, the medication made her sick for three to four days afterwards and she could not get out of bed or raise her head.  (R. 799-800).

---

[10]The ALJ's reasons for discounting Plaintiff's complaints regarding back and knee pain and resulting limitations (R. 25) primarily appear to be supported by the record.

12

Plaintiff reported these side effects to her doctor. Treatment notes indicate that Plaintiff was having the "expected side effects," i.e., fatigue, myalgias and flu-like symptoms which last two to three days after the injections. (R. 753-54). Plaintiff also sought medical care for fever, vomiting, and diarrhea during the course of the Interferon injections. (R. 264, 486). Finally, in the forms she completed for the Social Security Administration upon initially filing her claims, Plaintiff reported the side effects of being "very detached, mood swings, diarrhea, and very frequent urination." (R. 96). While the concentration limitation found by the ALJ may be attributed to the side effects of medication, it appears more likely that such resulted from Plaintiff's impairment. In any event, given this record, the ALJ should have addressed the claimed side effects, particularly the ones related to Plaintiff's year-long treatment for Hepatitis C since it may very well support at least a closed period of disability. See Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981); cf. Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990).

As for Plaintiff's argument that the ALJ erred by not addressing the credibility of testimony provided by her mother and ex-husband, I agree. Similar omissions by an ALJ have been held to constitute error. See Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1994) (providing that an ALJ must state the weight accorded to each item of impairment evidence and the reasons for the decision to accept or reject that evidence); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986) (same). As such, on remand the ALJ is directed to address the credibility of all witness testimony.[11]

---

[11] I recognize there is authority which holds that a remand is not required where the denial of benefits is supported by substantial evidence and the witness testimony the ALJ failed to discuss is duplicitous of the claimant's testimony. See Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981) (concluding that remand is not required where the ALJ failed to evaluate the testimony of claimant's ex-wife, who testified in accordance with the claimant's

13

As for Plaintiff's argument that the ALJ failed to consider the combined effect of her impairments, Plaintiff is correct that the Act and pertinent case law require that the ALJ consider each impairment, as well as the combined effect of all a claimant's impairments. 42 U.S.C. § 423(d)(2)(B); Gibson, 779 F.2d at 623. In Bowen v. Heckler, 748 F.2d 629 (11th Cir. 1984), the court held that where a claimant has alleged a multitude of impairments, a claim for benefits may lie even though none of the impairments, when considered individually, is disabling. In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled. Id. at 635; Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987). Here, while Plaintiff's argument is not wholly unpersuasive, I am constrained to find the decision minimally reflects that the ALJ recognized his obligation to do so. For example, the ALJ acknowledged that "a medically determinable impairment or combination of impairments is severe if . . .," and when "a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis." (R. 22). Additionally, the ALJ found that, while Plaintiff had several impairments considered severe, the impairments were "not severe enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (R. 24). The Eleventh Circuit has held that findings such as these suffice in evidencing consideration of the combined effects of a claimant's impairments.

---

subjective complaints, because the denial of benefits was sufficiently supported by the record). I also recognize that the testimony of Plaintiff's mother and ex-husband, while corroborating Plaintiff's subjective complaints, may not have shed new light on her condition or related restrictions, and thus the credibility determination as to the mother and ex-husband may be clearly implied from the ALJ's credibility determination as to Plaintiff. See Tieniber v. Heckler, 720 F.2d 1251, 1254-55 (11th Cir. 1983). Consequently, in light of the above authority I would not recommend remand if this was the ALJ's only error.

14

See Wilson, 284 F.3d at 1224-25; Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991); Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986). However, because Plaintiff's case is being remanded on other grounds as discussed above, the ALJ would be well-advised to address this point with greater specificity on remand, particularly at step four of the sequential evaluation when assessing Plaintiff's RFC.

As for Plaintiff's suggestion that the ALJ also erred in determining her RFC by not addressing her GAF score of 50-55, I disagree. Plaintiff's treating psychiatrist, Bharminder S. Bedi, M.D., opined on two occasions in mid-2002 that Plaintiff's GAF was 50-55. See (R. 195, 97). Contrary to Plaintiff's suggestion, a low GAF score does not require a finding of disability. See Seymore v. Apfel, 131 F.3d 152, at *2 (10th Cir. 1997) (unpublished table decision) ("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus, standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work"); accord Cox v. Apfel, No. 99-2296-JWL, 2000 WL 1472729, at *9 (D. Kan. Feb. 24, 2000). Furthermore, the psychiatrist did not identify specific mental limitations or restrictions aside from noting that Plaintiff remained anxious and depressed. Thus, a fair reading of this doctor's notes, including the GAF determinations, fail to identify any mental limitation that the ALJ should have considered but did not.

By her last claim, Plaintiff argues that the ALJ erred by mischaracterizing the VE's testimony. Specifically, Plaintiff contends that while the ALJ determined she could perform light work "impeded by additional exertional and/or nonexertional limitations," the ALJ failed to elicit testimony from the VE as to the extent those additional limitations would

reduce the number of jobs identified by the VE in response to the ALJ's first hypothetical question.[12]  (Doc. 15 at 8-9).

This argument is without merit.  Here, the ALJ *included* those additional limitations in his first hypothetical posed to the VE, and the VE identified the corresponding types and numbers of jobs that could be performed assuming all such limitations.  Thus, the first hypothetical assumed the ability to perform light exertional work with occasional climbing, balancing, stooping, kneeling, crouching; reduced attention and concentration that would cause difficulty concentrating and maintaining attention for extended periods of time but able to do routine, simple tasks (i.e., unskilled work); a moderate limitation on the ability to accept instructions and to respond appropriately to criticism; and a work environment that involved few changes.  (R. 812-13).  In response, the VE opined that Plaintiff could not engage in her past work but could work as a ticket seller, mail clerk, office helper, or ticket taker, and he identified the number of such jobs in the local, state, and national economy.  Id. at 813-14.  By my reading, the VE's response reveals that the additional limitations did not reduce the number of jobs identified because the additional limitations were included in the ALJ's

---

[12]In addition, Plaintiff summarily suggests that the ALJ erred in relying on a non-examining doctor's opinion in fashioning the first hypothetical question because that doctor's opinion "was neither realistic nor supported by the record."  (Doc. 15 at 8).  There are only three other physical RFC opinions of record in this case: (1) a consultative examiner opined in October 2002 (prior to Plaintiff's knee surgeries) that Plaintiff "could possibly do some type of sedentary work activity after receiving training through Vocational Rehabilitation," and could not do deep knee bends (R. 181-82); (2) a treating orthopedist opined that, between September 2002 and March 2003, Plaintiff's physical examination was essentially normal except for her inability to squat (R. 233); and (3) a non-examining state agency doctor opined in March 2003 that Plaintiff retained the RFC for medium exertional work.  (R. 241).  Further, on September 27, 2004, Plaintiff's treating physician wrote a note excusing Plaintiff from work for three months.  The doctor stated that the time was necessary to evaluate Plaintiff's chronic low back pain and that she was, at present, unable to lift over 20 pounds.  (R. 758).  On remand, the ALJ should state the weight accorded these opinions and the reasons therefore.

16

hypothetical question. Stated otherwise, the number and types of jobs identified by the VE would not be reduced at all given that the VE's response reflected the number of jobs available that an individual could perform if he or she was so limited.[13]

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, and I recommend that it be reversed and remanded for further proceedings before the Commissioner consistent with this Report and Recommendation. I further recommend that the Clerk be directed to enter Judgment in favor of the Plaintiff and to close the file, and the matter of fees and costs shall be addressed upon further pleadings.

> Respectfully submitted this
> 13th day of August 2007.
>
> THOMAS B. McCOUN III
> UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district

---

[13] To this end, it is worth noting again that the Plaintiff's counsel asked no questions of the VE during the administrative hearing although he had the opportunity to pose his own hypothetical questions had he wished to.

17

judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; see also Fed. R. Civ. P.

6; M.D. Fla. R. 4.20.


Copies furnished to:
The Honorable James D. Whittemore, United States District Judge
Counsel of Record